**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 3:07 pm, Aug 21, 2015

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Dublin Division

| | | |
|---|---|---|
| IN RE:<br>MORITZ DEVON HOLLOWAY<br><br>Debtor | )<br>)<br>)<br>)<br>) | Chapter 7 Case<br>Number <u>09-30446</u> |
| TODD BOUDREAUX, CHAPTER 7 TRUSTEE<br><br>Plaintiff<br><br>v.<br><br>MORITZ D. HOLLOWAY,<br>D. DUSTON TAPLEY, JR.,<br>TIDAL WATER PROPERTIES, INC.,<br>INVERTED INC., JAY TAPLEY<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>Number <u>10-03015</u> |

## OPINION AND ORDER

Before the Court is a Motion filed by D. Duston Tapley Jr. ("Tapley") to Correct Findings of Fact set forth in this Court's previous Opinion and Order entered after a multi-day trial.[1] The motion seeks the Court to reconsider its previous factual finding that the deed from Arthur Sharpe to Eloise Deloach ("the Quit-claim Deed") was not notarized or witnessed. Despite the fact that at trial Tapley consented to the entry into evidence of an

---

[1] The factual background and underlying arguments are set forth in this court's previous Order and Opinion and not repeated here. Dckt. No. 443.

unwitnessed/unnotarized deed (Ex. No. 41 admitted April 21, 2014), and failed to raise this issue in response to the Chapter 7 Trustee's ("Trustee") argument that the deed failed to provide notice because of these defects, Tapley now attempts to correct this matter after the entry of the Court's Order. Tapley also contends with the entry of the correct Quit-claim Deed, the Court's initial conclusion that the deed from Arthur Sharpe to Deloach did not provide legal notice was incorrect. Once this error is corrected, Tapley contends judgment should be entered in the defendants' favor. For the following reasons, the motion is granted in part and denied in part.

The first issue is whether a certified correct copy of the witnessed and notarized Quit-claim Deed should now be allowed into the record after the conclusion of a multi-day trial, post-trial briefing, and entry of this Court's order in the Trustee's favor. The Quit-claim Deed admitted into the record during the trial, with the consent of the parties, including the defendants, was unwitnessed and unnotarized.[2] The certified copy of the Quit-claim Deed Tapley now seeks to admit into the record reflects it was

---

[2] It appears as though the original recorded deed was on oversized paper and the copy admitted into evidence on a standard 8½ x 11 page that cut off evidence that the deed was actually witnessed and notarized. Compare Ex. No. 41 admitted April 21, 2014 with Def. Ex. No. 1 submitted May 5, 2015.

2

witnessed and notarized. Def. Ex. No. 1 submitted May 5, 2015. Tapley acknowledges he consented to the admission of the unwitnessed/unnotarized exhibit at the conclusion of the trial and failed to raise this issue in response to the Trustee specific post-trial brief arguments or before the Court entered its Opinion and Order, but contends the entry of the initial Quit-claim Deed was a mutual mistake that should be corrected.

At the hearing on the Motion to Correct, it was somewhat unclear which rule Tapley was attempting to invoke for the admission of this exhibit. Ultimately, Tapley argued the Court should admit the certified copy of the witnessed/notarized Quit-claim Deed to replace the erroneous exhibit pursuant to Federal Rule of Civil Procedure 60(b)[3], as the admission of the unwitnessed/unnotarized Quit-claim Deed was an error due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60. Because the motion was filed within 28 days of the entry of the Opinion and Order, Federal Rule of Civil Procedure 59[4] may also apply.

The Trustee opposes allowing a copy of the Quit-claim Deed into evidence after close of trial, the post-trial briefing, and

---

[3] Fed. R. Civ. P. 60 is made applicable to this adversary proceeding by Fed. R. Bankr. P. 9024.

[4] Fed. R. Civil P. 59 is made applicable to this adversary proceeding by Fed. R. Bankr. P. 9023.

3

entry of the order, arguing Tapley had multiple opportunities to raise this issue and failed to timely raise this issue. The Trustee argues against the admittance of the certified copy of the Quit-claim Deed as the initial unwitnessed/unnotarized copy was submitted into evidence with the consent of all parties, including Tapley's lawyer.[5] The Trustee also argues this is not "newly discovered evidence" and that it is too late for Tapley to now raise this issue. The adequacy and timing of the notice provided by the various deeds was a major focus of the arguments at trial and Tapley failed to raise this issue at trial, or in response to the Trustee's post-trial brief where the Trustee clearly argued the unwitnessed/unnotarized Quit-claim Deed was legally insufficient to provide notice as it was not witnessed nor notarized, or before the Court entered its Order. Nevertheless, the Trustee argues even if the Court allows the certified copy of the witnessed/notarized Quit-

---

[5] The Trustee also argued at the hearing that it is unclear from the certified copy of the Quit-claim Deed whether it was actually notarized. However, the Clerk of Superior Court typed upon the deed that the notary seal was affixed and there are markings on the Quit-claim Deed that are consistent with markings made when a raised notary seal is copied. Furthermore, given the date of the deed, prior to 1986, the actual notary seal was not required. See O.C.G.A. §45-17-6(a)(2); Hooten v. Goldome Credit Corp., 481 S.E.2d 550, 552 (Ga. Ct. App. 1997)(lack of notary's official seal does not defeat the effect of his signature on deed executed prior to July 1, 1986); see also Fed. R. Evid. 902 (self-authenticating evidence). For these reasons, this portion of the Trustee's objection is overruled.

4

claim Deed into evidence, title remained unclear until the June 2009 Mullis Order.

## CONCLUSIONS OF LAW

In general, a "motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." Gipson v. Mattox, 511 F.Supp.2d 1182, 1185 (S.D. Ala. 2007). Tapley does not argue any fraud or wrongdoing has occurred. He argues admitting the incorrect copy of the Quit-claim Deed was a mutual mistake. This Court agrees.

> Pursuant to Rule 60(b)(1)
>
> [o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)....

Fed. R. Civ. P. 60(b)(1)-(2). In Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167 (5th Cir. 1990) abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n. 14 (5th Cir. 1994), the court addressed what a movant must establish in order "to

5

reopen the case under Rule 60(b) on the basis of evidence that was available before rendition of judgment but that was not submitted in a timely fashion." Lavespere, 910 F.2d at 173. Under Rule 60(b)(1), the movant must show "mistake, inadvertence, surprise, or excusable neglect." Id. quoting Fed. R. Civil P. 60(b)(1).

Pursuant to Rule 59, "after a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59. Under Rule 59, the Court has discretion to reopen the record and may consider, among other things, the reasons for the moving party's omission, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before their responsive pleading was due, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened for the evidence to be admitted. Lavespere, 910 F.2d at 174.

Considering and applying these factors, under both Rule 59 and 60, the Court is persuaded to allow the certified copy of the witnessed/notarized Quit-claim Deed into the record to correct this mutual mistake. Even recognizing Tapley's lack of diligence in preventing and correcting this error, admitting an incorrect deed was a mutual mistake. The Trustee thought he was admitting a

6

correct copy, as did Tapley. There are no allegations of lack of good faith or fraud. Furthermore, there is no real prejudice to the Trustee as considering the case on the actual merits is not prejudice. Also, Tapley moved promptly after the order was entered to correct the mutual mistake.

Notwithstanding the foregoing, as discussed below, the admission of the witnessed/notarized Quit-claim Deed does not change this Court's ultimate conclusion that title was unclear until the entry of the June 2009 Mullis Order, which is within the relevant §548 reach back period, as well as the time frames for the Trustee to pursue his Georgia fraudulent transfer and breach of fiduciary duty claims. See Order, Dckt. No. 443, pp. 24-25. With the entry of the witnessed/notarized Quit-claim Deed Tapley argues the Court's legal conclusions that the Quit-claim Deed's legal description was invalid and title unclear until the June 2009 Mullis Order are in error. He argues extrinsic evidence in the form of Devon Holloway's ("Debtor's") testimony makes the description valid. In opposition, the Trustee reiterated his arguments regarding the uncertainty of property boundaries and title prior to the June 2009 Mullis Order. The Trustee explains there is no point of reference or key to allow a third party to locate the land and that the issue remained in dispute until the entry of the June 2009 Mullis Order.

Given the facts and circumstances of this case, the Court

AO 72A
(Rev. 8/82)

agrees with the Trustee. First, prior to the entry of the June 2009 Mullis Order there was a contentious and ongoing dispute among the many Sharpe heirs as to the ownership of this land and acreage, and the boundaries changed throughout the settlement negotiation process. Tapley[6], himself, explained that the boundary lines changed when the acreage changed from 133 acres to 76 acres. Tr. 4/16/2015 p. 190 lines 10-20. Tapley also testified there were 7-10 years of litigation over the division of the Sharpe property. Other evidence of unclear title and protracted litigation is that Deloach's motion to allow late was contested and the probate court's order allowing the claim was appealed.

In addition, Tapley testified the reduction from 133 acres to 76 acres was done by agreement of the heirs. Tapley stated there was enough land in the Sharpe probate estate for 133 acres to be given to Debtor but it would have had to be taken from the adjoining heir something Tapley surmised would not turn out well. There were no legal descriptions or plats as to the land surrounding the 133 acres. Id. p. 197. In addition, the will of Charlie Sharpe is extremely vague providing no key to a third party. See Templeton v. Howell, 701 S.E.2d 185, 186 (Ga. 2010)(a description must first furnish a key as to the boundaries of the land, before the court can

---

[6] As discussed in the Order and Opinion Tapley represented numerous parties in this disposition of the Sharpe probate estate.

8

consider extrinsic evidence as to the boundaries).

Even if the Court looked to extrinsic evidence, this does not change the Court's conclusion. See Id.; Brasher v. Tanner, 353 S.E.2d 478 (Ga. 1987)(if have a key in the description then extrinsic evidence may be used to unlock the key). While Debtor testified his father and he walked the land, he stated he was not aware of any problem with the acreage until the probate court ordered a survey to be done. He also stated that none of the visual cues he and his father used to walk the property are found in the legal description in the deed and no third party would be able to find the 133 acres based upon the description in the deed. Id. at 281-283. In addition, Debtor did not know for a fact that the markings he was looking at were in fact boundaries for the land of Arthur Sharpe. Id. at 283. Furthermore, Debtor was suspect of the survey because Isaiah Blount (an adjoining landowner) had walked the land with the surveyor to help set the boundaries. Id. at 221. Debtor had not been told that the 76.06 acres was based upon an agreement amongst the heirs and the surveyor was instructed to write the survey pursuant to the agreement. Id. at 221-223. Based upon the record in this case, the Court concludes its finding that title of the property was unclear until the June 2009 Mullis Order was not in error even with the admission of the witnessed/notarized Quit-claim Deed.

9

Tapley also argues that the Court made a mistake of law by not ruling that the pre-1998 Probate Code applies to this adversary. Tapley did not raise this issue in the underlying probate proceedings and settlement and did not raise this issue in the Bankruptcy Court proceedings until he filed a late summary judgment motion that was denied due to being filed past the civil motions deadline and then Tapley raised it again in the pre-trial order. As previously stated, this Court is not going to second guess the Superior Court or upset the settlement set forth in the June 2009 Mullis Order. That settlement agreement in the June 2009 Mullis Order effected the rights of numerous heirs and non-heirs, such as Deloach and Debtor, who were involved in the settlement, and this Court will not revisit that settlement and disposition of property. Furthermore, as stated in the Court's previous order and herein, applying the pre-1998 Probate Code does not make a difference because the legal description is invalid to convey title and title was unclear until the June 2009 Mullis Order was entered.

It is clear Tapley disagrees with this Court's ruling; however, Tapley attempts to relitigate the same issues previously addressed by this Court. His arguments regarding the Court's conclusions have been reconsidered and are rejected. A motion to reconsider is not to be utilized to get a second bite at the apple. See Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc., 763 F.2d

10

1237, 1239 (11th Cir. 1985)(cautioning against using a motion to reconsider to get "two bites at the apple").

**Damages**[7]

The Court has previously held that the Trustee is entitled to recover $114,000.00, subject to appropriate adjustments based upon the evidence submitted. Dckt. No. 443. In addition, the Trustee has filed an unobjected to Bill of Cost in the amount of $5,337.00 against the Tapleys. Dckt. Nos. 449 and 450. Therefore, the estate is entitled to a gross recovery of $119,337.00, subject to setoffs.

At the hearing to consider setoffs, the Trustee acknowledged he has received $28,500.00 from settlement with other third party defendants that should be credited against the Trustee's recovery. The parties disagree about whether the Tapleys were entitled to a right of setoff for the monies they paid to Debtor for their interest in the property. In fairness and to retain the Bankruptcy Code's parity among like pre-petition creditors, after the Tapleys pay the Trustee the amount of the judgment entered below, they may attempt to file proofs of claims in the underlying chapter 7 case, subject to objection by the Trustee. See 11 U.S.C.

---

[7] A joint hearing was held to consider the Motion to Correct, Setoffs, Reductions, and the Trustee's Bill of Costs.

11

§502. For these reasons, after appropriate adjustments, the Court finds the damages to the bankruptcy estate as a result of the avoided transfer and breach of fiduciary duty is $90,837.00.

For these reasons, the Motion for Reconsideration ORDERED GRANTED in part and DENIED in part. The Motion is GRANTED to allow the entry of the witnessed/notarized Quit-Claim Deed into the record (Ex. D-1 tendered at the May 5, 2015 hearing); and DENIED as to the request for a finding in favor of the defendants. Furthermore, for the reasons set forth herein and the previous Opinion and Order, a separate judgment in the amount of $90,837.00 shall be entered against the Tapleys, jointly and severally.

_____
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 21st day of August, 2015.